ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JOSÉ M. TORAL MUÑOZ<br><br>Recurrido<br><br>V.<br><br>**RAFAEL CINTRÓN PERALES;**<br>JUAN CARLOS VEGA; FUNDACIÓN RIGOBERTO FIGUEROA FIGUEROA CORP.<br><br>Peticionario | TA2025CE00932 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm.: GB2024CV00980<br><br>Sobre: Destitución del albacea; restitución de dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 29 de enero de 2026.

Comparece el señor Rafael Cintrón Perales (señor Cintrón Perales o peticionario) y solicita la revisión de una *Resolución y Orden* emitida el 7 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI).[1] En dicho dictamen, el foro primario denegó la solicitud para desestimar la acción derivativa que el señor José M. Toral Muñoz (señor Toral Muñoz o recurrido , en su carácter de presidente de la junta de directores de la Fundación Rigoberto Figueroa Figueroa Corp. (Fundación), presentó contra el peticionario.

Por los fundamentos que se exponen a continuación, se deniega la expedición del auto de *certiorari*.

**I.**

Este caso se inició el 4 de noviembre de 2024, cuando el señor Toral Muñoz presentó una *Demanda* sobre destitución de albacea y restitución de dinero contra el señor Cintrón Perales, el señor Juan

---

[1] Entrada Núm. 125 del caso GB2024CV00980 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 8 de agosto de 2025.

Carlos Vega Martínez (señor Vega Martínez) y la Fundación.[2] En esta, alegó que, mediante testamento abierto de 5 de abril de 2019, el señor Rigoberto Figueroa Figueroa (señor Figueroa Figueroa) instituyó a la Fundación como única y universal heredera y designó al peticionario como albacea. Sostuvo que este incumplió con la rendición de informes trimestrales y finales, liquidación de herencia y partición de bienes y utilizó fondos del caudal para gastos personales y de terceros sin autorización, como la compra de vehículos y la contratación de servicios y abogados. Además, arguyó que los señores Cintrón Perales y Vega Martínez realizaron actividades que excedieron los presupuestos autorizados, en violación de sus deberes fiduciarios.

Tras varios trámites procesales, el 9 de abril de 2025, el señor Cintrón Perales presentó una *Moción de Desestimación y/o Solicitud de Sentencia Sumaria por Falta de Legitimación Activa.*[3] Adujo que la controversia se limitaba a si el señor Toral Muñoz tenía legitimación para instar la acción en su carácter personal, como director o en nombre de la Fundación, al no contar con autorización de la Junta de Directores y haber expirado su nombramiento el 3 de abril de 2025. Manifestó que la acción derivativa era improcedente para solicitar la destitución de un albacea, facultad que le correspondía exclusivamente a los herederos, y que dicha figura se limitaba a reclamaciones por incumplimiento de los oficiales o administradores corporativos. Añadió que la única heredera era la Fundación y que la acción carecía de consentimiento de su junta de directores.

A su vez, el peticionario expresó que el recurrido no era heredero, accionista, director vigente ni estaba autorizado mediante resolución corporativa, por lo que la controversia no era justiciable por falta de capacidad y academicidad. A esos efectos, señaló que el nombramiento del señor Toral Muñoz como director, aceptado el 3 de

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC.
[3] *Íd.*, Entrada Núm. 75 en SUMAC.

abril de 2019 por un término de seis (6) años, no se extendió por asumir la presidencia de la junta de directores en enero de 2020. Ello, máxime que el 4 de abril de 2025, el señor Vega Martínez le notificó que no renovaría ni apoyaría su nombramiento como director.

El 21 de abril de 2025, el señor Toral Muñoz se opuso a la solicitud de desestimación y/o sentencia sumaria.[4] En lo pertinente, puntualizó que como presidente y miembro de la junta de directores de la Fundación, solicitó formalmente que se instara una acción contra el albacea, y ante la inacción de la entidad, acudió en acción derivativa para vindicar sus intereses. Esgrimió que exigir la autorización de la junta de directores resultaría incompatible con la naturaleza de dicho mecanismo y privaría a la corporación del único remedio disponible frente a la conducta de sus administradores.

Respecto a la alegada academicidad, apuntó que su mandato se extendía hasta el 23 de enero de 2026, conforme a los Estatutos (*By-Laws*), que establecían un término de seis (6) años, contados desde que asumió el cargo de presidente. Precisó que asumió el cargo de presidente el 23 de enero de 2020, tras el fallecimiento del miembro fundador y presidente. Añadió que su designación como tesorero, conforme al Artículo 12 de los Estatutos adoptados el 3 de abril de 2019, no incidía sobre el término presidencial, por lo que la interpretación del peticionario resultaba infundada.

Posteriormente, el 20 de mayo de 2025, el señor Cintrón Perales presentó una réplica en la que, entre otros, alegó que la expiración del término del recurrido como miembro de la junta de directores conllevó su descalificación automática como demandante. Reiteró que a lo anterior abonaba la ausencia de una resolución corporativa que lo facultara a promover la acción, así como la inexistencia de un nuevo nombramiento como director.

---

[4] *Íd.*, Entrada Núm. 79 en SUMAC.

Según alegó el peticionario, las funciones ejercidas por el recurrido dentro de la junta de directores, como tesorero, vicepresidente y presidente, no alteraron el término original de seis (6) años, al constituir cargos subordinados a la vencida condición de director. Insistió en que la acción derivativa exigía autorización de la junta de directores al no ostentar el recurrido la condición de accionista, miembro fundador ni interés especial.

Eventualmente, el 29 de mayo de 2025, el señor Toral Muñoz presentó una dúplica,[5] en la que, en lo concerniente a la controversia, planteó que el término de su cargo como miembro y presidente de la junta de directores no había vencido, conforme a los Estatutos de la Fundación. Planteó que, aunque la Resolución 01-2019 indicaba que el señor Figueroa Figueroa lo designó como presidente, los Estatutos no lo facultaban a ocupar el cargo hasta la renuncia, incapacidad o fallecimiento del miembro fundador.

Sometido el asunto, el 7 de agosto de 2025, el TPI emitió la *Resolución y Orden* recurrida, en la que declaró No Ha Lugar la solicitud de desestimación y/o sentencia sumaria del peticionario.[6] Tras consignar sus determinaciones de hechos, el foro recurrido razonó que la acción derivativa como remedio disponible para personas con interés especial cuando la entidad se rehusaba a actuar no podía condicionarse a la autorización de la junta de directores, puesto que precisamente surgía ante la inacción de dicho órgano. Asimismo, descartó el planteamiento de limitar este mecanismo a los herederos de la Fundación, por resultar contrario al reconocimiento de legitimación a directores de corporaciones sin fines de lucro y a personas con un interés especial. A tales efectos, sostuvo que el señor Toral Muñoz ostentaba un interés especial en la controversia por ser director, presidente de la junta de directores y albacea sustituto.

---

[5] *Íd.*, Entrada Núm. 88 en SUMAC.
[6] *Íd.*, Entrada Núm. 125 en SUMAC. Notificada el 8 de agosto de 2025.

En cuanto al señalamiento de que la acción derivativa se restringía a reclamaciones por incumplimiento de deberes fiduciarios de oficiales corporativos, el TPI puntualizó que dicho remedio alcanzaba a cualquier persona interna o externa que causara daños a la entidad. Precisó que, de tenerse por ciertos los hechos alegados, el señor Cintrón Perales lesionó los intereses de la Fundación.

Respecto al término del señor Toral Muñoz como director y presidente, el foro primario acogió la determinación emitida en el caso *Vega v. Toral*, BY2023CV04591.[7] Concluyó que, indistintamente del punto inicial del cómputo del término, operaba la cláusula de continuidad del Artículo 16 de los Estatutos que disponía que los integrantes de la junta de directores inicial ejercerían sus cargos por un término de seis (6) años y permanecerían en funciones hasta su sustitución o renovación en reunión, a fin de evitar vacantes. Ante ello, acentuó que no consta decisión de la junta de directores al respecto. De esta manera, estableció que el término del señor Toral Muñoz no había expirado.

El TPI indicó que, si bien acogió la determinación de la sala hermana, examinó la controversia en sus méritos. Señaló que el recurrido asumió la presidencia tras el fallecimiento del señor Figueroa Figueroa, por lo que la controversia se limitó a determinar si el nombramiento ocurrió en vida del miembro fundador, conforme a la Resolución 01-2019, o en la reunión de la junta de directores del 23 de enero de 2020, según la Resolución 02-2019. Al respecto, destacó que los Artículos 15 y 17 de los Estatutos disponían:

> Artículo 15.- [...] En caso de renuncia, incapacidad o muerte del Miembro Fundador, este designa como miembro de la Junta de Directores inicial al Sr. Juan Carlos Vega Martínez. Una vez integrado el Sr. Vega Martínez a la Junta de Directores, sus miembros elegirán un nuevo Presidente. [...]
>
> [...]

---

[7] Se hace constar que ante el Tribunal Supremo de Puerto Rico se encuentra pendiente el recurso de *certiorari* CC-2025-0853, mediante el cual se solicitó la revisión de la determinación emitida por un panel hermano de este foro apelativo en el recurso TA2025AP00217.

Artículo 17.- 1. Salvo el nombramiento por el Miembro Fundador de los miembros iniciales de la Junta de Directores y los cargos que ocuparán, la Junta de Directores elegirá de entre sus miembros a quien ejerza las funciones de Presidente, Secretario y Tesorero, cuyos mandatos tendrán una duración de seis (6) años, sin perjuicio de sucesivas renovaciones. [...]

El TPI determinó que dichas disposiciones eran claras al prever únicamente que, tras la muerte del miembro fundador y la incorporación del señor Vega Martínez, la junta de directores iba a elegir al nuevo presidente. Subrayó que tal proceso se materializó formalmente en la reunión del 23 de enero de 2020, consignada en la Resolución 02-2019. De ello, el tribunal de instancia coligió que, conforme al Artículo 15 de los Estatutos, primero se integró el señor Vega Martínez a la junta de directores y, acto seguido, el recurrido asumió la presidencia, por lo que el término correspondiente expiraría en enero de 2026, momento en el cual podría activarse la cláusula de continuidad del Artículo 16. Concluyó que la aceptación consignada en la Resolución 01-2019 carecía de eficacia jurídica por no ajustarse a los Estatutos, independiente de su valor simbólico.

Por otro lado, el foro recurrido declaró Ha Lugar la solicitud de remedio provisional del señor Toral Muñoz y prohibió el uso de fondos del caudal hereditario para el pago de honorarios de abogados de los señores Cintrón Perales y Vega Martínez. El TPI tomó conocimiento judicial de que, en el caso BY2024CV03692, una sala hermana prohibió al señor Vega Martínez utilizar dichos fondos para sufragar sus honorarios de abogados. Relató que en la vista celebrada el 16 de julio de 2025, los abogados del peticionario plantearon que el albacea podía hacer uso de los fondos para los pagos relacionados con la administración del caudal. Empero, resolvió que, conforme al testamento, el albacea no estaba autorizado a contratar abogados para sufragar su defensa personal. Ello, puesto que en el testamento se disponía que el albacea "Podrá girar contra todos los depósitos en cuentas bancarias pertenecientes al caudal relicto y ordenar el pago

de cualquier cuenta necesaria para los pagos que originen la administración y conservación del caudal" y podrá "Contratar los servicios profesionales correspondientes para cumplir con sus responsabilidades como albacea". Concluyó que permitir lo contrario colocaría a la Fundación en la posición insostenible de financiar los incumplimientos de deberes alegados, por lo que procedía la medida provisional mientras se dilucidaba la controversia.

El 25 de agosto de 2025, el señor Cintrón Perales presentó una solicitud de reconsideración parcial, en la que, entre otros, insistió en la falta de legitimación activa del recurrido, el vencimiento de su nombramiento y la ausencia de interés especial al no ser beneficiario de la Fundación.[8] Reiteró que la remoción de un albacea no procedía mediante acción derivativa y que, de ser viable, correspondía a la propia Fundación instarla. Además, alegó que la condición del recurrido como albacea no le confería legitimación para promover una acción derivativa sin autorización de la junta de directores, dado que el albacea principal no había renunciado, fallecido, incapacitado ni sido removido, y que el Tribunal había prejuzgado la controversia. De otro lado, sostuvo que el TPI obvió la determinación del caso *Krupp v. Toral*, GB2023CV00656, que según alegó, advino firme[9] y se adjudicó responsabilidad civil al recurrido por manejo indebido de los fondos del caudal relicto. Dicha petición fue declarada No Ha Lugar por el TPI mediante *Orden* emitida el 1 de diciembre de 2025.[10]

Aún inconforme, el 19 de diciembre de 2025, el señor Cintrón Perales presentó un recurso de *certiorari*, en el que planteó que el TPI cometió los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA MOCIÓN DE RECONSIDERACIÓN EN TORNO A LA RESOLUCIÓN Y ORDEN QUE DENEG[Ó] LA "MOCIÓN DE

---

[8] *Íd.*, Entrada Núm. 131 en SUMAC.
[9] Es menester puntualizar que la referida determinación no ha advenido firme, toda vez que se encuentra bajo la consideración del Tribunal Supremo de Puerto Rico, mediante una petición de *certiorari* para revisar la determinación de un panel hermano en el recurso KLAN202500368.
[10] *Íd.,* Entrada Núm. 141 en SUMAC. Notificada el 1 de diciembre de 2025.

DESESTIMACIÓN Y/O SENTENCIA SUMARIA POR FALTA DE LEGITIMACIÓN ACTIVA" DE TORAL, INCIDIENDO ASÍ EN PARCIALIDAD, PREJUICIO O ERROR CRASO Y MANIFIESTO EN LA APRECIACIÓN DE LA PRUEBA CONFORME LO EXIGE LA REGLA 36.4 DE PROCEDIMIENTO CIVIL.

SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA MOCIÓN DE RECONSIDERACIÓN DE LA DECISIÓN MEDIANTE LA CUAL SE RECONOCIÓ A TORAL LEGITIMACIÓN ACTIVA, AUN CUANDO CARECE DE AUTORIZACIÓN ALGUNA DE LA JUNTA DE DIRECTORES DE LA FRFF PARA COMPARECER EN REPRESENTACIÓN Y A NOMBRE DE LA FUNDACIÓN CONTRA EL ALBACEA. EL TRIBUNAL, ADEMÁS, ADOPTÓ DETERMINACIONES INTERLOCUTORIAS ERRADAS EMITIDAS EN UN CASO PARALELO —DEL CUAL EL PETICIONARIO NO ES PARTE—, EN ABIERTA CONTRAVENCIÓN AL DEBIDO PROCESO DE LEY, Y CONCEDIÓ REMEDIOS EXTRAORDINARIOS QUE RESULTAN EN CONCLUSIONES CONTRARIAS A DERECHO.

TERCER ERROR: ERRÓ EL TPI AL NEGARSE A RECONSIDERAR LA RESOLUCIÓN Y ORDEN QUE EXTIENDE DE MANERA INDEFINIDA EL NOMBRAMIENTO DE TORAL, INCIDIENDO ASÍ EN PREJUICIO, PARCIALIDAD O ERROR CRASO Y MANIFIESTO EN LA APRECIACIÓN DE LA PRUEBA.

CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A RECONSIDERAR LA RESOLUCIÓN Y ORDEN QUE, EN CONTRAVENCIÓN A DERECHO, CONCEDIÓ EL REMEDIO PROVISIONAL SOLICITADO POR TORAL AL AMPARO DE LA REGLA 56 DE PROCEDIMIENTO CIVIL. DICHO REMEDIO PROHIBIÓ AL ALBACEA UTILIZAR FONDOS DEL CAUDAL PARA SUFRAGAR HONORARIOS DE ABOGADO EN LA PRESENTE ACCIÓN, CUYO PROPÓSITO ES REMOVERLO ILEGALMENTE DE SU CARGO, SIN CUMPLIR CON LOS REQUISITOS PROCESALES Y JURISPRUDENCIALES APLICABLES. EL TRIBUNAL LO OTORGÓ SIN RECIBIR PRUEBA NI EXIGIR FIANZA, CONFORME LO REQUIERE LA REGLA 56.3 DE PROCEDIMIENTO CIVIL, Y CONCEDIÓ UNA MEDIDA QUE NO PERSIGUE ASEGURAR LA EFECTIVIDAD DE UNA EVENTUAL SENTENCIA. TAL ACTUACIÓN CONSTITUYE UN ERROR CRASO Y MANIFIESTO, ADEMÁS DE REFLEJAR PREJUICIO Y PARCIALIDAD.

En esencia, el peticionario reiteró que el señor Toral Muñoz carecía de autorización de la junta de directores para instar el pleito y que su término como director había expirado el 3 de abril de 2025. Planteó que el TPI erró al concluir que dicha autorización solo era exigible cuando la Fundación compareciera como demandante, aun cuando el recurrido alegó actuar en nombre y representación de esta, sin ser heredero, miembro ni beneficiario, ni comparecer como albacea sustituto. Asimismo, sostuvo que el Artículo 12.10 de la *Ley General de Corporaciones*, 14 LPRA sec. 3790, no era aplicable,

puesto que el señor Toral Muñoz no tenía legitimación activa ni un interés especial en la Fundación. Añadió que la remoción de un albacea era un asunto sucesoral que no podía ventilarse mediante una acción corporativa.

También, alegó que el TPI actuó en contradicción con la determinación previa de un panel hermano de este Tribunal que exigía autorización de la junta de directores para que la Fundación instara acciones judiciales. En cuanto al remedio provisional concedido, subrayó que el mismo fue otorgado sin prueba ni fianza, en contravención a la Regla 56.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 56.3 y no existía impedimento para el uso de fondos del caudal hereditario para el pago de honorarios de abogados. A su juicio, el TPI prejuzgó los méritos del caso al imponer dicha prohibición sin que hubiese mediado remoción de su cargo como albacea.

Más adelante, el 14 de enero de 2026, el señor Vega Martínez afirmó que el foro primario confundió el término del recurrido como director con el desempeño de un cargo administrativo, ignoró disposiciones de los Estatutos sobre la expiración automática del término y concluyó erróneamente que la aceptación de un cargo administrativo renovaba dicho término. Adujo que, una vez expirado el término del recurrido como director, cesó su facultad de ocupar cargos administrativos y permitir su permanencia indefinida contravenía los principios de gobernanza corporativa.

Al respecto, arguyó que el señor Toral Muñoz fue nombrado miembro-director el 3 de abril de 2019, fecha en que también se firmaron los Estatutos, y que dicho nombramiento se realizó por el miembro fundador, sin votación. Puntualizó que la única actuación posterior fue la aceptación del cargo administrativo de presidente, lo cual no constituyó una renovación como director, por lo que su término expiró el 3 de abril de 2025.

Indicó que notificó por escrito su negativa a renovar dicho nombramiento y que el TPI ignoró que los Estatutos solo permitían convocar reuniones de la junta por el presidente o por la mayoría de sus miembros, lo cual no ocurrió. Alegó que el recurrido nunca convocó la reunión por conocer que su renovación sería rechazada. Sostuvo que, conforme al Artículo 19(f) de los Estatutos, la expiración del término produjo el cese automático de sus funciones. A esto añadió que equiparar el desempeño de un cargo administrativo con una renovación automática como director crearía una estructura de poder indefinida sin fiscalización.

Por su parte, el 20 de enero de 2026, la Fundación solicitó ser eximida de expresarse sobre los méritos del recurso, al asumir una postura neutral.

Al día siguiente, el señor Toral Muñoz se opuso a la expedición del auto de *certiorari*.[11] Argumentó que el peticionario erró al limitar la legitimación activa a accionistas, miembros, beneficiarios de la entidad, cuando un panel hermano en *Aboy v. Casa Aboy, Inc.*, KLCE201602337, reconoció legitimación a los directores en las corporaciones sin fines de lucro. Subrayó que aplicaba la doctrina de interés especial, dadas las alegaciones de inacción del albacea, falta de rendición de cuentas y uso indebido de fondos del caudal hereditario. Indicó que la junta de directores rechazó su solicitud para instar la acción, por lo que procedía la acción derivativa.

Asimismo, esgrimió que exigir autorización de la junta para una acción derivativa sería un contrasentido. Además, arguyó que la determinación previa de este Tribunal sobre autorización para instar un pleito aplicaba únicamente a las acciones directas de la Fundación. Señaló que la frase en nombre y en representación de la

---

[11] El 22 de enero de 2026, el señor Vega Martínez presentó una *Moción en Cumplimiento de Orden* que, en esencia, constituyó una réplica a la oposición a la expedición del auto de *certiorari* presentada por el señor Toral Muñoz. Dicha moción se presentó sin la autorización de este Tribunal, por lo que no será considerada en sus méritos.

Fundación era inherente a este tipo de acciones, pero no implicaba la usurpación de la voluntad corporativa. Defendió que el TPI actuó dentro de su discreción de conceder el remedio provisional, el cual no privó al albacea del control del caudal, sino que limitó el uso de fondos para su defensa personal, por lo que no requería fianza.

El recurrido planteó que el peticionario citó de forma incompleta el Artículo 16.1 de los Estatutos, que disponía:

> Una vez nombrados por el Miembro Fundador, el cargo de los miembros de la Junta de Directores inicial tendrá una duración de seis (6) años, sin perjuicio de sucesivas renovaciones, que podrán ser ilimitadas. **Los Directores continuarán en el ejercicio de su cargo hasta la reunión de la Junta de Directores en la que se decida su renovación o sustitución.** (Énfasis suplido).

Expresó que dicha disposición constituía una cláusula de continuidad que evitaba vacíos de poder y excluía la expiración automática del término. A su entender, el cargo solo cesaba mediante una determinación afirmativa adoptada en una reunión de la junta de directores, y mientras ello no ocurriera, el director conservaba su autoridad. Asimismo, señaló que la alegación del señor Vega Martínez de que era el único director con facultad para votar y que se oponía a la renovación de su término contradecía el Artículo 16.2 de los Estatutos, el cual disponía que la renovación o designación de directores procedía únicamente en casos de renuncia, muerte o incapacidad, circunstancias que no concurrían en este caso, a saber:

> La renovación o designación de nuevos miembros de la Junta de Directores, por razón de renuncia, muerte o incapacidad de los miembros iniciales, se hará por la mayoría de los miembros de la Junta de Directores conforme al procedimiento establecido en estos estatutos para la adopción de acuerdos, en cuya decisión no participará el Director afectado.

## II.

### A. *Certiorari*

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise decisiones de un foro inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207

(2023); *McNeill Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 404 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La expedición del auto es discrecional, por tratarse ordinariamente de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, limita de forma taxativa las instancias en que procede expedir el auto de *certiorari* en un asunto interlocutorio civil. *McNeill Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478 (2019). Así, solo es revisable un dictamen bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o la denegación de mociones dispositivas. Por excepción, se pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público o situaciones que esperar a la apelación implicaría un fracaso irremediable de la justicia. *Íd.*

Si el asunto interlocutorio no se encuentra en tales instancias, el Tribunal carece de autoridad para intervenir, a fin de evitar dilaciones por la revisión de controversias que se pueden atender en una apelación. *Scotiabank v. ZAF Corp., et al., supra*, pág. 486.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR __ (2025), R. 40, rige los criterios que orientan nuestra facultad discrecional para atender una petición de *certiorari*, a saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari*, no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR, supra*, pág. 336. En tal caso, este Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare v. Mun. Las Piedras I, supra*, pág. 405.

## B. Remedios provisionales

La Regla 56.1 de Procedimiento Civil, *supra*, R. 56.1, dispone lo siguiente con respecto a los remedios provisionales:

En todo pleito antes o después de sentencia, por moción de la parte reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial.

De conformidad con dicha norma, el tribunal de instancia goza de amplia flexibilidad para conceder las medidas que estime necesarias y convenientes, según las circunstancias del caso, para asegurar la efectividad de una eventual sentencia. *Engineering Service v. AEE*, 209 DPR 1012 (2022); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019); *Citibank et al. v. ACBI et al.*, 200 DPR 724 (2018). Por ello, las disposiciones sobre remedios provisionales deben interpretarse con amplitud y liberalidad, concediendo el remedio que mejor asegure la reclamación con el menor inconveniente al demandado. *Íd.* La única limitación es que sea razonable y adecuado para dicho propósito. *Íd.* En ese ejercicio, el tribunal deberá examinar que el remedio sea provisional; que tenga el objetivo de asegurar la

efectividad de la sentencia, y que atienda los intereses de ambas partes, según la justicia sustancial y las circunstancias del caso. *Íd.*

Dada la amplitud de esa discreción, las determinaciones del foro primario merecen gran deferencia. Por ello, la intervención apelativa solo procede cuando se demuestra prejuicio, parcialidad, craso abuso de discreción o la adopción de una medida irrazonable, inadecuada, o no considere los intereses de ambas partes según las circunstancias del caso y la justicia sustancial. *Íd.*

### C. Acción derivativa

La acción derivativa es un remedio en equidad para vindicar los derechos de una corporación cuando quienes están llamados a hacerlo incumplen con ese deber. C. E. Díaz Olivo, *Corporaciones: Tratado sobre Derechos Corporativo*, 2da ed., AlmaForte, Colombia, 2018, pág. 432. Mediante este mecanismo se protege a la entidad ya que, de lo contrario, sus intereses quedarían sin tutela. C. E. Díaz Olivo, *Sin Fines de Lucro: Normativa Jurídica del Tercer Sector*, 2da ed., AlmaForte, Colombia, 2016, pág. 251. Por su naturaleza, procede cuando los directores se rehúsan a instar la acción o están impedidos de evaluar objetivamente la conveniencia del pleito. A modo ilustrativo, la Corte Suprema de Delaware estableció lo siguiente:

> Thus, "by its very nature [a] derivative action impinges on the managerial freedom of directors." Therefore, the right of a stockholder to prosecute a derivative suit is limited to situations where either the stockholder has demanded the directors pursue a corporate claim and the directors have wrongfully refused to do so, or where demand is excused because the directors are incapable of making an impartial decision regarding whether to institute such litigation. *Stone v. Ritter*, 911 A.2d 362 (2006).

En Puerto Rico, el Artículo 12.06 de la *Ley General de Corporaciones, supra*, sec. 3786, limita la legitimación activa para instar acciones derivativas a los accionistas al momento de la transacción impugnada o que adquirieron las acciones por ministerio de ley. No obstante, en el contexto de las corporaciones sin fines de

lucro, el Artículo 12.10 de la *Ley General de Corporaciones, supra,* sec. 3790, amplía la legitimación activa a sus miembros, esto es:[12]

> Con el propósito de vindicar los intereses de las corporaciones sin fines de lucro frente a las actuaciones indebidas de sus directores o administradores, además de la legitimación activa que confiere el Artículo 9.13 de esta Ley al Secretario de Justicia, tendrán también legitimación activa para acudir a los Tribunales en acciones derivativas, conforme al Artículo 12.06, los miembros de dichas corporaciones.

Esta ampliación reconoce que, aunque dichas entidades carecen de accionistas con intereses propietarios, sus miembros ostentan derechos de participación y voto en la gobernanza que les confieren un interés distinto al del público general y análogo al de los accionistas. Díaz Olivo, *Sin Fines de Lucro, op. cit.*, pág. 251.

La doctrina del interés especial no se limita a los miembros de la corporación, sino que permite reconocer legitimación activa a otras personas externas a la estructura interna. *Íd.*, pág. 253. Para determinar si un demandante posee un interés especial, los tribunales consideran, entre otros factores: la naturaleza extraordinaria de los actos impugnados y del remedio solicitado; la existencia de fraude o conducta indebida por parte de los administradores; la disponibilidad y efectividad de la fiscalización del Secretario de Justicia, y la naturaleza de la clase beneficiada y su relación con la entidad. *Íd.*, págs. 253-254. En particular, se ha reconocido legitimación cuando se alegan violaciones graves a los fines de la entidad, el remedio solicitado es limitado, existen alegaciones de fraude o incumplimiento de deberes fiduciarios, o se impugnan ciertos actos que desvirtúan el objetivo de la entidad y ponen en riesgo su existencia. *Íd.*, pág. 254.

---

[12] No todas las organizaciones sin fines de lucro cuentan con miembros, ya que, ante la ausencia de inversionistas con expectativas económicas, la entidad puede operar mediante un cuerpo directivo encargado de cumplir sus fines benéficos, como ocurre comúnmente con las fundaciones. El ordenamiento jurídico reconoce amplia flexibilidad para que cada entidad determine su estructura interna. En ese contexto, el Artículo 1.02(A)(4) de la *Ley General de Corporaciones, supra*, sec. 3502, dispone que las condiciones, los derechos y las prerrogativas de los miembros deben establecerse en el certificado de incorporación o en los estatutos de la corporación. Díaz Olivo, *Sin Fines de Lucro, op. cit.*, págs. 120-123.

Asimismo, el reclamante debe demostrar un interés directo y definido, distinto al interés general del público en la fiscalización de las entidades sin fines de lucro. *Íd.*, pág. 258. Conforme a estos principios, existen cinco (5) grupos con potencial legitimación activa en acciones judiciales contra las organizaciones sin fines de lucro: el Secretario de Justicia, los directores, los miembros, los donantes y los beneficiarios de la entidad. *Íd.*, pág. 260.

**III.**

Al examinar la totalidad de los hechos del caso, en atención a la normativa jurídica y los documentos aplicables, incluyendo el testamento otorgado por el señor Figueroa Figueroa y los Estatutos de la Fundación, no advertimos criterio jurídico alguno que justifique nuestra intervención ni dejar sin efecto la determinación recurrida. Nada en el expediente nos sugiere que el TPI haya incurrido en error de derecho ni en abuso de discreción en su determinación.

En el dictamen recurrido, el foro primario declaró No Ha Lugar la solicitud de desestimación y/o sentencia sumaria, tras razonar que la acción derivativa no podía condicionarse a la autorización de la junta de directores cuando la entidad se rehusó a actuar. Asimismo, descartó limitar dicho remedio a herederos y concluyó que el señor Toral Muñoz ostentaba legitimación activa para instar el pleito. Respecto al término del recurrido como director y presidente, el TPI interpretó las disposiciones de los Estatutos aplicables y concluyó que no había expirado, al operar la cláusula de continuidad prevista en los Estatutos.

Por otro lado, el foro primario concedió un remedio provisional al prohibir el uso de fondos del caudal hereditario para sufragar honorarios de abogados de los señores Cintrón Perales y Vega Martínez, como medida cautelar mientras se dilucidaba la controversia. Ello, al interpretar las disposiciones del testamento relativas a las facultades del albacea y escuchar los argumentos de

los representantes legales de las partes en una vista previa. En particular, concluyó que, aunque el albacea podía girar contra cuentas del caudal y contratar servicios profesionales para la administración y conservación del caudal, ello no autorizaba sufragar con dichos fondos su defensa personal. Asimismo, razonó que permitirlo colocaría a la Fundación, cuyos derechos se peticionó vindicar, en la posición insostenible de financiar los incumplimientos de deberes alegados en la *Demanda*. Del expediente no surge que el TPI erró al así concluir. Además, la concesión de remedios provisionales descansó en la sana discreción del foro de instancia y, en este recurso, no se demostró que medió un craso abuso de discreción ni que la medida decretada provocaría un fracaso irremediable de la justicia. Tampoco atisbamos que el foro recurrido adoptó una medida irrazonable, inadecuada o que dejara de considerar los intereses de ambas partes conforme a las circunstancias del caso y la justicia sustancial, máxime cuando el peticionario continúa en posesión de los fondos del caudal en su carácter de albacea.

Tras evaluar el recurso a la luz de la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1 y la Regla 40 del Reglamento de este Tribunal, *supra*, R. 40, reiteramos que no procede nuestra intervención. En consecuencia, se deniega la expedición del auto de *certiorari* solicitado.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones